UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEAN-RICHARD VONGERMETEN,

        Plaintiff,

   v.                               Case No. 17-cv-167-pp

PLANET HOME LENDING, LLC,
MICHAEL DUBECK, JEFFREY BERGIDA,
and MARK CLAUSS,

        Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 60), DISMISSING DEFENDANTS DUBECK, BERGIDA AND CLAUSS, DENYING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT (DKT. NO. 53), DENYING DEFENDANT'S MOTION FOR SANCTIONS (DKT. NO. 61), DENYING PLAINTIFF'S MOTIONS TO QUASH (DKT. NOS. 63, 82), DENYING PLAINTIFF'S MOTION FOR SETTLEMENT (DKT. NO. 69), DENYING PLAINTIFF'S MOTIONS FOR A COURT OF SPECIAL EQUITY (DKT. NOS. 73, 75, 76), DENYING PLAINTIFF'S MOTION FOR IMMEDIATE INJUNCTIVE RELIEF (DKT. NO. 87), DENYING PLAINTIFF'S MOTION FOR JUDGMENT (DKT. NO. 89), DENYING DEFENDANT'S MOTION FOR SANCTIONS UNDER RULE 11(c) (DKT. NO. 94) AND DENYING PLAINTIFF'S MOTION TO PRODUCE EVIDENCE AND MANDATORY COUNTER-CLAIM (DKT. NO. 95)**

---

The plaintiff is representing himself. On January 29, 2018, the court dismissed the plaintiff's original complaint at the screening stage, finding that he had not stated a claim for federal relief. Dkt. No. 52. The court ordered the plaintiff to file an amended complaint by March 30, 2018. Id. The plaintiff did so on February 27, 2018. Dkt. No. 60. Before the court could screen the amended complaint, the plaintiff filed numerous notices, letters and motions. See Dkt. Nos. 62-95. This order screens the amended complaint, denies the outstanding motions and discusses next steps.

## I.    BACKGROUND

### A.    Original Complaint

The plaintiff filed his original complaint on February 6, 2017. Dkt. No. 1. While the complaint awaited screening, the only defendant—Planet Home Lending, LLC—filed a motion to dismiss the case for failure to state a claim. Dkt. No. 13. The plaintiff responded with a motion for summary judgment, dkt. no. 19, and other documents, see dkt. nos. 21-51.

The court screened the original complaint on January 29, 2018 and addressed the outstanding motions on the docket. Dkt. No. 52. In finding that the complaint did not state a claim, the court stated that

> [e]ven construing the plaintiff's complaint liberally, the court finds that the complaint does not state a cause of action for which a federal court may grant relief. On page five of the complaint form, under section C., "Jurisdiction," the plaintiff marked the box that says, "I am suing for a violation of federal law under 28 U.S.C. §1331." Dkt. No. 1 at 5. But nowhere in the complaint does he mention any federal laws. In the letter he attached to the complaint—the letter he wrote to the defendant—the plaintiff mentions RESPA, the FDCPA, and TILA, but his complaint does not refer to any of those statutes. The complaint does not explain which of those statutes this particular defendant violated, or what actions this particular defendant took that violated any provisions of any of those statutes (or any others). Rather, he makes general assertions that he has learned that "banks"—in general—are engaging in certain lending practices. He also states that he has "reason to believe" that the defendant is not a *bona fide* creditor; the court suspects that he means that while he may owe money to *someone* on his loan, he doesn't believe the defendant can prove that he owes that money to *the defendant.*
>
> In fact, the plaintiff does not ask this court to decide whether the defendant violated a federal law at all. Instead, he asks the court to conduct a "civil administrative process," to assist him in obtaining proof that the defendant owns his mortgage debt. He asks that, if the defendant is not able to prove "via requested documents that they are a qualified creditor to whom [his] mortgage loan is owed," the court issue an order requiring the defendant to "cease & desist all collection activity immediately, including any/all threat of

foreclosure," to prohibit the defendant from selling the loan and to declare him the free and clear owner of the home. Dkt. No. 1 at 5.

Federal courts decide disputes between parties. If a person with a mortgage loan believes a lender has violated some specific provision of RESPA or the FDCPA or TILA, that person may file a lawsuit making that allegation (and the lender may defend against it). But without a specific dispute between this plaintiff and this defendant over a specific violation of federal law, the federal district court does not have the authority to open up an administrative proceeding to decide whether the defendant owns the plaintiff's loan. The plaintiff asserts that he has been making his mortgage payments and that his loan is in good standing. He seems to have brought this lawsuit solely because he came across information that leads him to believe that there are some lenders who claim to own loans that they don't own, and he wants to make sure that isn't the case with his loan. That is not a "dispute" that the federal court system can resolve.

There *are* procedures that give borrowers the ability—even the right—to find out who owns a mortgage loan. The plaintiff appears to be familiar with at least some of those procedures. He knows about the QWR ("qualified written request") procedure under RESPA, because he attempted to make a QWR, dated January 18, 2017, to the defendant. The certified mail receipt he attached to the complaint shows that the lender received that request at its office in Dallas, Texas on January 22, 2017, dkt. no. 1-1 at 7, and he attaches a letter from the defendant, dated January 24, 2107, in which the defendant acknowledges receipt of the request and informs him that they are reviewing his loan file, dkt. no. 1-1 at 8. Rather than waiting for the QWR process to play out, the plaintiff filed this federal complaint on February 6, 2017—less than two weeks after the defendant wrote to him that it was reviewing his loan file.

On March 17, 2017, the court received a letter from the plaintiff. Dkt. No. 7. In it, he told the court that the administrative process he'd asked the court to preside over was finished and that the defendant had not provided him "any documentation as required by law to prove or establish themselves as a bonafide creditor." Id. Based on this alleged failure, he asked the court to order the defendant to stop "all further collection matters," order the defendant to return all his payments to him, grant him damages for "violating Fair Credit Lending Practices" and order the defendant to grant him free and clear title to the property. Id. Oddly, he attached to this letter a letter from the defendant, dated March 3, 2017—two weeks earlier—in which the defendant informed him that it was still

reviewing his loan file, and that it would respond to him once it had finished. Dkt. No. 7-1 at 5.

On the same day—March 17, 2017—the court received a second letter from the plaintiff. Dkt. No. 8. In this letter, he informed the court that the defendant had responded to his request and offered to make the note available for him to inspect, but the plaintiff stated that the terms of inspection the defendant had offered were not acceptable to him. Id. In this letter, he asked the court to order the defendant to "send wet ink promissory note to Racine County Clerk." Id. The plaintiff has filed numerous other documents in the ensuing months—some of them motions, some simply copies of documents or correspondence.

It is possible that since filing his complaint on February 6, 2017, the plaintiff has identified a violation of one of the statutes he referenced in his letters to the defendant. The court will give the plaintiff an opportunity to amend his complaint, to allege some specific violation of federal law that he believes this defendant has committed.

Dkt. No. 52 at 6-10. The court warned the plaintiff that his amended complaint must stand on its own—in other words, it would take the place of the original complaint. Id. at 10. The court explained that there was nothing more for the plaintiff to file at that point but the amended complaint. Id. at 11.

B.    Amended Complaint

The amended complaint is twenty-one pages long. Dkt. No. 60. The plaintiff added three defendants to the caption: Michael Dubeck, Jeffrey Bergida and Mark Clauss. Id. at 1. The plaintiff appears to allege that Michael Dubeck is the CEO of Planet Home Lending, LLC, and that both he and the corporation reside in Connecticut. Id. The plaintiff alleges that defendant Bergida resides in Florida, but does not explain who Bergida is or what position he holds.[1] Id. The plaintiff alleges that defendant Clauss resides in Wisconsin.

---

[1] In May 2017, the plaintiff filed a letter addressed to "Jeffrey R. Bergida, Esq., Sr. Counsel & Compliance Officer, Planet Home Lending Co." Dkt. No. 10. He provided another letter to Bergida, addressing him by the same title, with his

Id. The amended complaint does not explain the role that Clauss played in the plaintiff's allegations, but the docket indicates that defendant Mark Clauss is the attorney who has represented Planet Home Lending in this case since it filed a motion to dismiss in May of 2017. See Dkt. No. 13.

As recounted above, the court's previous screening order required the plaintiff to cite specific provisions of federal law that he believed the defendants had violated. Pages two through five of the amended complaint appear to be his attempt to do so. The plaintiff starts with this declaration:

> PLAINTIFF CLAIMS DECEPTIVE BUSINESS PRACTICES, FALSE BILLING, FRAUD IN THE FACTUM/CONCEALMENT, MISREPRESENTATION, MISSUSE OF THE MAILS, UNFAIR SURPRISE UNJUST ENRICHMENT, AND SEEKS RESTITUTION IN TERMS MONETARY AND EQUITY, CANCELLATION OF DEFENDANT'S ATTORNEY FEES, MORTGAGE AGREEMENT SET-OFF FREE & CLEAR TITLE TO SAID PROPERTY PLUS MONETARY RECOUPMENT; REQUESTING GSA BONDS WITH INSTRUCTIONS TO IDEMNIFY MY EN LEGIS

Dkt. No. 60 at 2. He follows this declaration with a "relevant statutes" section. Id. The plaintiff reproduces the text of various federal statutes: "18 U.S. Code §1005 – Bank Entries, reports and transactions," "§1341 Frauds and swindles," "§1346 (2011) Definition of 'scheme or artifice to defraud,'" "18 U.S. Code §1349 – Attempt and conspiracy," "Mail Fraud (18 USC 1341, 1342, & 1345; 39 USC 3005 & 3007)," "31 U.S. Code § 1341(a)(1)(A) & (B) – Limitations on expending and obligating amounts," "18 USC §1961 (RICO)," "15 U.S. Code §1641(e)(2)," "15 U.S. Code §1641(f)(1)(f)," "12 CFR §230.4(a)(1) Disclosure of Account opening," "18 U.S. Code §1831n – Accounting objectives, standards, and requirements (GAAP)," "15 U.S. Code §1692(f) – Unfair practices," "15 USC

---

amended complaint. Dkt. No. 60-2 at 1. The court does not know whether Bergida is, in fact, an officer of Planet Home Lending Company.

1692e(2)(A)- False or misleading representations," "12 USC 2605(k) RESPA," and "WI 428.103." Id. at 3-5.

Next comes what appears to be the facts section. The plaintiff alleges that he "began QWR inquiry on January 18, 2017 to determine defendant's status as bonafide payee to mortgage documents via QWR per 12 U.S.C. Section 2605(e)[.]" Id. at 5. He says that the defendant sent "a letter of March 3" but that he had not given license to "exceed the statutory window of an administrative process, max 45 days per Dodd-Frank Act, Section 1463(c)." Id. The amended complaint states, "Ability to actually view alleged original note did not take place until late June 20, 2017(1), a full 5 months, far exceeding the 45 days for meaningful disclosure required by law." Id.

Next, the amended complaint alleges that the plaintiff's QWR request asked "who the owner of the obligation was," but that the defendant "treated" that as "irrelevant." Id. The plaintiff alleges that the defendant was obligated to respond "per 15 U.S. Code §1641(a)" and that "Disclosures should have occurred under 15 U.S. Code §1641(e)(2)(A)." Id. He says that he asked the defendant to "prove their standing with legal right to demand debt payment as creditor," and that, to do so, he had requested to see a "wet-ink signature of the original note." Id. The plaintiff alleges that he eventually viewed "a document alleged to be the original" at Gray & Associates, LLP in New Berlin, Wisconsin, but that he "challenges the validity of the notice to be proved by Affidavit under penalty of perjury and forensic examination." Id. at 7.

Next, the plaintiff alleges that attorney's fees are being added to his monthly billing statements and that "no contract offer or acceptance to pay attorney fees was entered into by Plaintiff." Id. at 7. He points to paragraphs seven and twenty-one of the mortgage security agreement and alleges that "Par.

21 citation of WI 428 is limited and does not allow defendant to attach legal fees to a monthly mortgage statement or even bill for services."[2] <u>Id.</u> at 8. He states that he did not agree to pay the fees for legal services and that his contract is unconscionable under Wis. Stat. §428.106. <u>Id.</u> at 9-10. He says that adding attorney's fees to his monthly mortgage statements violates 15 U.S.C. §1692f and §1692e(2)(A) because it is a false representation of the amount of the debt; he alleges that the defendant is trying to collect an amount not authorized by the agreement creating the debt. <u>Id.</u> at 9.

Amidst his allegations that the defendant has improperly added attorney's fees to his statement, the plaintiff also asserts that because "Defendant and legal counsel work as a team," their behavior toward the plaintiff "constitute[s] a pattern of RICO violation[s] where parties in this case conspire to deprive Plaintiff of his property using predatory, bully billing and collection tactics." <u>Id.</u> at 9. He says this practice is also a "misuse of the mails." <u>Id.</u> He cites criminal mail fraud statutes. <u>Id.</u>

The plaintiff then "challenges the veracity of the alleged original note held by defendant[.]" <u>Id.</u> at 10. He says that the mortgage documents were "robo-signed, never sealed in Plaintiff's presence, evidenced by unnotarized copies in plaintiff's possession." <u>Id.</u> He states that "there existed fraudulent concealment and in the factum and inducement in the original local documents" because, he alleges, certain facts were not disclosed to him. <u>Id.</u> He "demands to see a chain of custody that incorporates defendant's standing with all relevant parties, assignments, owner(s), beneficiaries, payments and conveyances." <u>Id.</u>

---

[2] Attached to the plaintiff's amended complaint is a document that looks to be the "mortgage agreement" to which the plaintiff refers. Dkt. No. 60-2 at 34. The amended complaint does not reference this attachment.

Finally, the plaintiff notifies the court—as he did in his original complaint—that "[i]t has come to Plaintiff's attention that banks and servicers are engaging in economic practices of deceptive accounting (4,5), similar to stealing or swindling." Id. at 11. In support of this argument, the plaintiff references a single paragraph from the 1961 version of a publication from the Federal Reserve Bank of Chicago called "Modern Money Mechanics: a workbook on deposits, currency and bank reserves" authored by Dorothy M. Nichols. Id. at 12, Dkt. No. 60-1 at 6. He says that he offered to settle with "defendant"—he does not say which one—by "offering a novation dated June 22, 2017 to overlook systemic fraud of defendant's industry, granting permission to leverage the note in exchange for defendant returning free and clear title and to stop billing plaintiff." Dkt. No. 60 at 13. He says the defendant did not respond, and has "refused to honor that agreement." Id. He also says that he sent the defendant a "lawful Bill-of-Exchange dated July 18, 2017 for full pay-off of said alleged 'loan' as a tax credit which defendant retained and did not return for cause or cure, which under UCC 4-603 qualifies as an acceptance," but the defendant did not respond to this, either. Id.

The amended complaint concludes by saying that its intent "is recovery of damages, settlement and closure of said alleged mortgage 'loan,' attendant fees and charges." Id. at 14.

C.     Other Filings

Between the time the court issued the January 29, 2019 screening order and the time the plaintiff filed his signed amended complaint, he filed six documents (including an unsigned amended complaint). Since the court received the signed amended complaint on February 27, 2018, the plaintiff has filed *thirty-one* letters, motions, affidavits and other documents.

On the day that the court issued its January 29, 2018 screening order, the plaintiff filed a motion for declaratory judgment asking the court to prevent the defendant from attaching attorney fees to his billing statements. Dkt. No. 53. Along with the motion, the plaintiff filed an affidavit attesting that all his accounts are prepaid. Dkt. No. 54.

Two days later, the plaintiff filed a fourteen-page "Response to Defendant's Original Request for Declaratory Judgement and Motion to Dismiss." Dkt. No. 55. This document appears to be a response to Planet Home Lending's motion to dismiss, dkt. no. 13, which the defendant had filed *eight months* earlier and which the court had decided in the January 29, 2018 order, dkt. no. 52 at 13.

On February 12, 2018, the plaintiff filed an unsigned complaint. Dkt. No. 56. The February 27, 2018, signed amended complaint supersedes that document (and his original complaint).

On February 13, 2018, the court received a letter from the plaintiff. Dkt. No. 57. The letter did not ask the court to do anything. It contained statements. The next day, the court received from the plaintiff a document entitled "UCC FINANCING STATEMENT." Dkt. No. 58.

A little over two weeks after the court received the signed, amended complaint, defendant Planet Home Lending filed a motion for sanctions under Fed. R. Civ. P. 37. Dkt. No. 61. The motion alleged that the plaintiff violated the court's January 29, 2018 order by filing a state court case and by filing tax form 1099-A's with the IRS. Id. OnMarch 20, 2018, the court received from the plaintiff a motion to quash the defendant's motion for sanctions. Dkt. No. 63.

Between March 23 and August 27 of 2018, the court received seventeen filings from the plaintiff. Dkt. Nos. 64-80. Several the filings are letters, like the

letter the court received on February 13, 2018—they consist of declarations. In one letter, dated March 21, 2018, the plaintiff stated that he "solicit[ed] the court's assistance to effect [a] set-off;" the plaintiff appeared to be asking the court to order that the mortgage and promissory notes be treated as debt instruments/government obligations to be applied to any tax liabilities he may have had. Dkt. No. 64. Other letters made no requests, simply stating long lists of declaratory facts or citing statutes or regulations; still others were not addressed to the court. Dkt. Nos. 65-67, 77. Almost all the letters had pages of attachments—one as long as ninety-four pages.

Several of the filings are affidavits of various sorts—an affidavit of mailing, an affidavit stating various laws, an affidavit acknowledging and accepting a warranty deed. Dkt. Nos. 70, 71, 74, 78, 79. One filing is nothing but documents (accompanied by a request for a hearing, which the plaintiff included in many of his filings). Dkt. No. 68. One filing is a notice to the court that the plaintiff had received a billing statement. Dkt. No. 72. One document is titled, "Final Notice of Default with Opportunity to Cure;" it is addressed to defendants Dubeck and Clauss. Dkt. No. 80.

Four of the documents the plaintiff filed are motions, seeking action from the court: Motion for Settlement and Closure of Case and Account, dkt. no. 69, and three motions "For a Court of Special Equity Via Security Deposit," dkt. nos. 73, 75, 76. On September 24, 2018, the defendant filed a single response to all these motions. Dkt. No. 81. On February 27, 2019, the defendant supplemented that omnibus response. Dkt. No. 91. While it is docketed as a letter, the plaintiff filed a reply to the defendant's response on March 4, 2019. Dkt. No. 92.

The plaintiff has filed eleven other documents since October 1, 2018. There are more letters—one relating to an indemnity bond, dkt. no. 85, and two relating to a postal money order the plaintiff says he sent to Planet Home Lending to settle the case, dkt. nos. 86, 88. There is a letter addressed to defendant Clauss. Dkt. No. 90. There is a notice to Planet Home Lending, containing the plaintiff's allegation that Planet's continuing to bill him is "false billing" that could "incur additional charges." Dkt. No. 93. He has filed four more motions: a Motion to Quash Response, dkt. no. 82; a Motion for Immediate Injunctive Relief and Notice of Contract Violation, dkt. no. 87; a Motion for Judgment and Notice of Administrative Default, dkt. no. 89; and a Motion for Defendants to Produce Accounting Evidence and Mandatory Counter-Claim to Defendants Motion Per FRCP 13, dkt. no. 95.

Not surprisingly, the defendant has filed another motion for sanctions, and has requested a hearing. Dkt. No. 94.

## II.    ANALYSIS

### A.    Screening

#### 1.    *Standard*

Section 1915(e)(2)(B) of Title 28 requires a court to dismiss a case filed by an unrepresented plaintiff at any time if the court determines that it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Felton v. City of Chi., 827 F.3d 632, 635 (7th Cir. 2016). At this stage, the court accepts the factual allegations in the complaint as true and draws all reasonable inferences in

favor of the plaintiff. <u>Hotchkiss v. David</u>, 713 F. App'x 501, 505 (7th Cir. 2017). The Supreme Court has explained that a court may dismiss a claim as factually frivolous if it is "clearly baseless," "fanciful," "fantastic," delusional," "irrational," or "wholly incredible." <u>Felton</u>, 827 F.3d at 635 (citing <u>Denton</u>, 504 U.S. at 32-33). A court may dismiss a claim as legally frivolous if it is "based on an indisputably meritless legal theory." <u>Id.</u> The court, however, may not dismiss a claim as frivolous simply because it finds that "the plaintiff's allegations are unlikely." <u>Johnson v. Stovall</u>, 233 F.3d 486, 489 (7th Cir. 2000) (citing <u>Denton</u>, 504 U.S. at 33).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, but his statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). A complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

Courts liberally construe the pleadings of *"pro se"* litigants (that is, those litigants who proceed without a lawyer), and they hold *pro se* complaints, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers. Erikson v. Pardus, 551 U.S. 89, 93 (2007). At the same time, "'Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.'" Standard v. Nygren, 658 F.3d 792, 800 (7th Cir. 2011) (quoting United States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003)).

2.      *Defendants Dubeck, Bergida and Clauss*

The caption of the plaintiff's amended complaint names four defendants—Planet Home Lending, LLC, Michael Dubeck, Jeffrey Bergida and Mark Clauss. Dkt. No. 60 at 1. The facts section of the amended complaint, however, consistently refers to "defendant"—in the singular form. As far as the court can tell, when the plaintiff says "defendant," he means Planet Home Lending, LLC. Apart from the caption's reference to Dubeck as the CEO of defendant Planet Home Lending, LLC, the plaintiff has not identified who these individuals are, what role they play in his allegations or why he believes they, as individuals, are liable to him. He does not describe any actions that these individuals took to violate federal and/or state law. The amended complaint does not even mention these individuals anywhere except in the caption. Because the plaintiff includes no allegations against the individual defendants, the court will dismiss defendants Michael Dubeck, Jeffrey Bergida and Mark Clauss from the case.

### 3. *Frivolous statutory claims against Planet Home Lending*

In its January 29, 2018 order, the court told the plaintiff that it was giving him an opportunity to amend the complaint, "to allege some specific violation of federal law that he believes [Planet Home Lending] has committed." Dkt. No. 52 at 10. It appears that the plaintiff's response to this instruction was to fill the first several pages of the amended complaint with references to, or reproductions of the text of, no fewer than fifteen federal laws, a federal regulation and one Wisconsin statute. Dkt. No. 60 at 2-5. Most of the statutes the plaintiff listed are criminal statutes—making false statements under 18 U.S.C. §1005, various kinds of fraud under 18 U.S.C. §§1341, 1342 and 1345, conspiracy to defraud under 18 U.S.C. §1349, racketeering under 18 U.S.C. §1961, generic conspiracy under 18 U.S.C. §371, 18 U.S.C. §42 (which the plaintiff identifies as "EXTORTIONATE CREDIT TRANSACTIONS," but which actually prohibits the importation or shipment of invasive or injurious animals into the United States). Id. at 2-4. But the plaintiff does not have a private right of action under any of these statutes. McGee v. Nisson Motor Acceptance Corp., 619 F. App'x 555, 555 (7th Cir. 2015). To the extent that the plaintiff attempts to make claims against Planet Home Lending under these criminal statutes, those claims are frivolous. Id.

He also cites 39 U.S.C. §§3005 and 3007. Dkt. No. 60 at 3. Section 3005 is a law that allows the U.S. Postal Service to take certain actions to prohibit the use of the United States mails to conduct fraudulent advertising or lottery schemes. Section 3007 allows the Postal Service to ask a district court for permission to detain mail as part of such actions. The plaintiff has no private right of action under these statutes, and to the extent that he tries to bring

claims against Planet Home Lending under these statutes, those claims are frivolous.

The plaintiff mentions that he believes that he is an issuer of a security sold publicly as a mortgage-backed security and says that he can "file a 1099 OID per Title 26 § 1275 for recovery of proceeds, making the holder subject to unpaid taxes." Dkt. No. 60 at 4. Section 1275 of Title 26 is a definition statute for the portion of the Internal Revenue Code that governs bonds and other debt instruments. The plaintiff cannot "sue"—or file documents with the IRS, even— under a definition statute. If this is a claim, it is frivolous.

Next, the plaintiff lists 31 U.S.C. §§1341(a)(1)(A) and (B). This statute is known as the "Anti-Deficiency Act;" it prohibits "[a]n officer or employee of the United States Government or of the District of Columbia" from making or authorizing expenditures that exceed the amount appropriated for the expenditure. See Salazar v. Ramah Navejo Chapter, 567 U.S. 182, 197 (2012). Planet Home Lending is not an officer or employee of the United States Government or the District. To the extent that the plaintiff is attempting to bring claims against Planet Home Lending under this statute, those claims are frivolous.

The plaintiff lists 12 U.S.C. §1831n. Dkt. No. 60 at 4. This is part of the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA). FIRREA gives the Federal Deposit Insurance Corporation (FDIC) the "statutory authority to administer claims against a depository institution for which the FDIC is receiver." Farnik v. F.D.I.C., 707 F.3d 717, 720-21 (7th Cir. 2013). "Courts lack jurisdiction to hear such claims unless plaintiffs first present them to the FDIC." Id. The plaintiff does not indicate that he has made any

claims against Planet with the FDIC. That means that this court does not have jurisdiction to hear a FIRREA claim against Planet.

The plaintiff also lists a federal regulation—12 C.F.R. §230.4(a)(1). Dkt. No. 60 at 4. This regulation is part of Regulation DD, and was promulgated under the Truth in Savings Act (TISA), 12 U.S.C. §§4301-4313. Cobb v. Monarch Finance Corp., 913 F. Supp. 1164, 1170 (N.D. Ill. 1995). The plaintiff has not listed the Truth in Savings Act in his laundry list of statutes. Even if he had, it does not apply to the plaintiff's allegations about his mortgage and promissory note. Congress explained that the purpose of the Truth in Savings Act was to "require the clear and uniform disclosure of the rates of interest which are payable on deposit accounts by depository institutions and the fees assessable against deposit accounts, "so that consumers can make a meaningful comparison between the competing claims of depository institutions with regard to deposit accounts." 12 U.S.C. §4301(b). The plaintiff is not alleging that he was trying to decide where to open a bank account, and that because Planet Home Lending did not give him clear information about its interest rates and fees on bank accounts, he could not make an accurate comparison of Planet's rates and fees with the rates and fees of other banks. This regulation does not apply.

The court understands that the plaintiff has a theory that the American banking system is fraudulent. He states that theory as follows:

> It has come to Plaintiff's attention that banks and servicers are engaging in economic practices of deceptive accounting . . . similar to stealing or swindling. The process begins by the bank opening a transaction account in the name of the depositor but without the depositor's knowledge. 2. Depositing the promissory note into depositor's transaction accounts, 3. Crediting the account with a value of money for the face value of the promissory note, again without informing the depositor, 4. Representing and discounting the note as of zero worth to the depositor, to obtain its value for free,

creating the perception of a "loan" in reverse direction to which it actually occurred, and then crediting the fraudulently structured payments back to themselves, to make more loans, reward investors, etc. using the depositor's credit, making note depositors debt sureties to those notes, without compensation. authorization or full disclosure, which voids any contract. . . . The consumer (credit) "loan" occurs on the receivables side of the ledger and one set of books, however, the liability side of books should show cash credit in favor of Plaintiff for deposit of his note, lending it to the bank, according to 12 U.S.C. 1813(L)(1) and GAAP/GAAS. Generally Accepted Accounting Practices . . . are advocated by the Financial Accounting Standards Board (FASB) . . . .

Dkt. No. 60 at 11-12. He mentions Regulation DD in connection with this theory.

The plaintiff does not allege that this specific defendant, Planet Home Lending, engaged in the practice he alleges above. He indicates only that "banks and servicers" engage in the practice. Assuming for the sake of argument that the plaintiff had alleged that Planet was engaged in this practice, he appears to be trying to argue that this practice is the same thing as opening up a consumer depository account, and that Planet would have had an obligation to tell him about its interest rates and fees so that he could shop around for another bank. The argument borders on the absurd. The disclosures that Planet was required to make to the plaintiff were the disclosures required by statutes governing the issuance of mortgages, not statutes governing the disclosure of interest rates and fees on consumer deposit accounts.

The plaintiff's claims in this regard are the kind of "clearly baseless," "fanciful," "fantastic," delusional," "irrational" and "wholly incredible" claims that this court need not allow to proceed.

### 4. *Other claims against Planet Home Lending*

The plaintiff lists provisions of 15 U.S.C. §1641. Dkt. No. 60 at 4. These are provisions of the Truth in Lending Act (TILA), 15 U.S.C. §1601, *et seq.* He lists 15 U.S.C. §1692, a provision of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* Dkt. No. 60 at 4-5. He lists 12 U.S.C. §2605(k), a provision of the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. §2601, *et seq.* Dkt. No. 60 at 5. Finally, he cites a Wisconsin statute, Wis. Stat. §428.103(1)(e). Dkt. No. 60 at 5. That statute allows mortgage lenders who hold a first lien on certain mortgage loans to contract to collect their attorneys' fees from the borrower in foreclosure cases.

### a. RESPA Claim

The first line of the facts section of the amended complaint states that the plaintiff undertook a QWR inquiry on January 18, 2017. Id. at 6. The amended complaint does not say to whom the plaintiff submitted the QWR, or whether he submitted it to Planet Home Lending. It does not explain what the QWR requested. That information was in the plaintiff's *original* complaint.[3] In its previous screening order, the court recounted,

> The plaintiff's complaint alleges that he originally took out a home loan from Flagstar Bank through "Bank of Wisconsin, Kenosha (defunct)." Dkt. No. 1 at 2. He alleges that the loan was "recently acquired by the defendant, Planet Home Lending, who told him over the phone that it had bought his debt or that Flagstar had sold it to them. Id. He indicates that "last year," the defendant notified him that he should "direct [his] monthly payments to them," and says that he has done that; he says that his loan is in good standing."

---

[3] The court explicitly told the plaintiff that his amended complaint needed to stand on its own. It wrote: "He may not simply refer the reader of the amended complaint back to the original complaint, or to any of the many documents he has filed to date. The amended complaint must stand on its own." Dkt. No. 52 at 10.

Dkt. No. 52 at 5. With this context (and because the amended complaint cites 12 U.S.C. §2605 immediately after his sentence on QWR), the court assumes that the plaintiff's reference to a "QWR" is a reference to a "Qualified Written Request," which is a statutory term defined in RESPA. See 12 U.S.C. §2605. Dkt. No. 60 at 5. Because the plaintiff cited 12 U.S.C. §2605(e) in his list of statutes, because he mentions a "QWR," and because the court knows what it knows from the original—now superseded—complaint, the court assumes that the plaintiff is trying to state a claim under RESPA.

"RESPA imposes certain duties on servicers of federally related mortgage loans." Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A., 845 F.3d 852 (7th Cir. 2017).

> As relevant here, the statute requires loan servicers to promptly respond to a "qualified written request" from a borrower seeking "information related to the servicing" of his loan or alleging that his account is in error. § 2605(e)(1)(A)–(B). The Act gives borrowers a cause of action against a servicer for actual damages suffered "as a result of" a servicer's failure to comply with these duties. § 2605(f)(1)(A); *see also Catalan v. GMAC Mort. Corp.*, 629 F.3d 676, 681 (7th Cir. 2011). Statutory damages of up to $2,000 are available if the borrower proves that the servicer engaged in a "pattern or practice of noncompliance" with its RESPA duties. § 2605(f)(1)(B). Successful plaintiffs may also recover costs and attorney's fees. § 2605(f)(3).

> "[T]he statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). Rather, the statute covers only written requests alleging an account error or seeking information relating to loan servicing. "Servicing" is a defined term, which limits the scope of the loan servicer's duty to respond. "Servicing" means "receiving any periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required" by the terms of the loan. § 2605(i)(3). So a qualified written request can't be used to collect information about, or allege an error in, the underlying

mortgage loan. *Medrano*, 704 F.3d at 666–67; *see also Poindexter v. Mercedes–Benz Credit Corp.*, 792 F.3d 406, 413–14 (4th Cir. 2015).

> If a loan servicer receives a valid qualified written request, RESPA requires it to take the following actions, but only "if applicable": (A) "make appropriate corrections in the account of the borrower"; (B) after investigating the account, "provide the borrower with a written explanation or clarification" explaining why the account is correct; or (C) "provide the borrower with … [the] information requested by the borrower" or explain why it is "unavailable." § 2605(e)(2)(A), (B) & (C); *see also Catalan*, 629 F.3d at 680. The statute also requires the servicer to provide the contact information of an employee who can provide further assistance. § 2605(e)(2)(C).

Id. at 856-57.

The plaintiff has alleged that he made a QWR on January 18, 2017. Dkt. No. 60 at 6. The court assumes—the amended complaint does not specifically allege—that the plaintiff sent his QWR to defendant Planet Home Lending, LLC. Dkt. No. 60 at 6.[4] The court can discern that the plaintiff has alleged three problems with the defendant's response to the QWR: (1) the defendant did not respond until more than forty-five days after the QWR; (2) that the plaintiff could not view the alleged original note until five months after he made his initial request; and (3) that the defendant treated his inquiry about the owner of the obligation as irrelevant. Id. The court does not have a copy of the defendant's response to the plaintiff's QWR. However, liberally construing the plaintiff's complaint, he has alleged that the defendant did not properly respond to his QWR and thus he has stated a claim under RESPA.

---

[4] Attached to the plaintiff's *original* complaint is a letter addressed to Planet Home Lending. Dkt. No. 1-1 at 1. That letter is dated January 18, 2017. The court assumes that this document is what the plaintiff refers to as his "Qualified Written Request."

The plaintiff has not provided much of the "who, what, when, where, why" that helps to notify a defendant and the court about what it is the plaintiff is claiming. (The court notes here that the plaintiff did not do what the court asked him to do in its January 29, 2018 order—such as using the court's form complaint and including any relevant facts and claims from his original complaint in any free-standing amended complaint.) Because the court is required to liberally construe the claims of a plaintiff who is representing himself, however, the court concludes that the amended complaint alleges that Planet Home Lending did not properly respond to his QWR, and that he has stated a claim under RESPA.

b.     TILA Claim

Next, the amended complaint alleges that when the plaintiff asked for the identity of the owner of the loan, "disclosures should have occurred under 15 U.S.C. 1641(e)(2)(A)." Dkt. No. 60 at 6. This section of the TILA states that "[f]or purposes of this section, a violation is apparent on the face of the disclosure statement if—(A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the notice, or any other disclosure of disbursement[.]" 15 U.S.C. §1641(e)(2)(A). Based on the facts the plaintiff has pled, the court cannot figure out how the defendant has violated *this* provision of the TILA. The amended complaint does not allege that the plaintiff received a disclosure statement. It does not say who he received a disclosure statement from, or what the disclosure statement said if he did receive one.

But the next provision of the statute, 15 U.S.C. §1641(f)(2), states in part, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and

telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. §1641(f)(2). This provision seems to apply to the allegations in the amended complaint that "[i]ncluded in Plaintiff's QWR was the request to know who the owner of the obligation was which the defendant treated as irrelevant[;]" and "Plaintiff requested defendant prove their standing with legal right to demand debt payment as creditor, producing documents including but not limited to original wet-ink signed note. The mere providing of office address and phone numbers under TILA does not prove standing." Dkt. No. 60 at 6. At this early stage, the court will allow the plaintiff to proceed on a TILA claim under 15 U.S.C. §1641(f)(2). See Sanchez v. Onewest Bank, FSB, No. 11 CV 6820, 2013 WL 139870, at *4 (N.D. Ill. Jan. 10, 2013) ("'[A] violation of §1641(f)(2) occurs . . . when the servicer sends an inadequate response to that request.'") (quoting Bradford v. HSBC Mortg. Corp., 829 F.Supp.2d 340, 352 (E.D. Va. 2011)).

> c.      FDCPA Claim

The amended complaint appears to allege that the original mortgage note did not allow for the addition of attorney's fees to the balance of the plaintiff's mortgage: "No contract offer or acceptance to pay attorney fees was entered into by Plaintiff." Dkt. No. 60 at 7. The amended complaint asserts that paragraphs two, seven and twenty-one of the "mortgage security Agreement" address attorney's fees. Id. The amended complaint asserts that these provisions required the defendant to "prove lawful creditor status." Id. The pleading asserts that the plaintiff

> has not contracted with defendant for legal services, has not asked for title opinions and is not in foreclosure, and did not ascribe any legal cost for defendants fulfilling their burden under the law, presuming it to be a tax-deductible business expense for Defendant, who has sent at least 5 billing

> statements to which attorney fees were added to monthly
> mortgage statement in violation of 15 USC 1692e(2)(A) . . . .

Id. at 9. It also alleges that "[a]dding additional fees on to the monthly mortgage statement violates 15 USC § 1692f(1) and making a 'false representation of the amount . . . of any debt.' § 1692e(2)(A)." Id.

Construing these allegations liberally, the plaintiff is alleging that by including attorneys' fees in his mortgage statements, Planet Home Lending is attempting to collect a debt that isn't authorized by the mortgage agreement and is falsely representing the amount of the debt he owes. On page thirty-four of one of the plaintiff's attachments to his amended complaint, there is a document titled "MORTGAGE." Dkt. No. 60-2 at 34. The "Mortgage" appears to be an un-notarized mortgage dated October 31, 2011, issued to borrower "Dean Von Germeten" by lender "Flagstar Bank, FSB, a Federally Chartered Savings Bank," and indicating that the borrower owes the lender $30,000.00 dollars. Id. at 34-38. Paragraph 21 is titled "Attorneys' Fees," and says that if the document is "subject to Chapter 428 of the Wisconsin Statutes, 'reasonable attorneys's fees' shall mean only those attorneys' fees allowed by that Chapter," id. at 37.

The amended complaint does not refer to this attachment, so the court does not know whether this is the "mortgage security Agreement" to which the plaintiff refers. But at this early stage, the court will allow the plaintiff to proceed on a claim that Planet Home Lending has violated the FDCPA by trying to collect a debt the plaintiff does not owe and by falsely representing the amount of the debt he owes.

### d.    Wis. Stat. §428.103 claim

The final statute listed in the amended complaint is a state-law claim. Federal courts can exercise "supplemental jurisdiction" over state-law claims if

they have jurisdiction over federal claims to which the state-law claims are "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

As the court noted, Wis. Stat. §428.103 allows mortgage lenders to contract with borrowers, or charge borrowers, for attorneys' fees under certain conditions. In the case of mortgage loans made after November 1, 1981, the statute does not apply unless the amount of the loan was $25,000 or less. Wis. Stat. §428.101(3).

The amended complaint insists that if the plaintiff did contract with Planet Home Lending to be obligated for attorneys' fees, such a contract is unconscionable under Wis. Stat. §428.106(2). Regardless, it does not appear that this statute applies to the plaintiff. The "mortgage security Agreement" referenced in the amended complaint indicates that the mortgage was issued in October 2011 and that the borrower (the plaintiff) owed the lender $30,000. Dkt. No. 60-2 at 34. For mortgages issued after 1981, Wis. Stat. §428.103 applies only to those for which the amount financed was $25,000 or less. The court will not allow the plaintiff to proceed on this claim.

    B.    <u>Remaining Motions</u>

        1.    *Plaintiff's Motions*

            a.    Motion for Declaratory Judgment (Dkt. No. 53)

This motion is duplicative of several of the motions that the court denied in its first screening order (Dkt. No. 52, denying plaintiff's motion for summary judgment and plaintiff's motion for final judgment). The motion asks the court to decide the lawsuit in favor of the plaintiff before the defendant has had the opportunity to answer the plaintiff's allegations. As the court explained in its original screening order, this motion is premature. There is a process that any

party filing a case in federal court must follow. A party cannot come into federal court and demand that he "win" without any input from the defendant. If the plaintiff wants to proceed in federal court, he must respect the federal court process. The next step in that process is for the defendant to answer the allegations in the amended complaint on which the court is allowing the plaintiff to proceed. The defendant has a *right* to answer those allegations. The court will deny this motion.

b.     Motions to Quash (Dkt. Nos. 63, 82)

On March 20, 2018 the plaintiff filed a "motion to quash" the defendant's first motion for sanctions. Dkt. No. 63. Several months later, when the defendant filed an omnibus response to the plaintiff's numerous motions, the plaintiff filed a "motion to quash response." Dkt. No. 82. These "motions to quash" do not allege that the defendant's responses were procedurally improper. They only reiterate the arguments that the plaintiff has made in many, many other filings. They are the plaintiff's responses to the defendant's filings, and that is how the court considers them. The court will deny the motions to quash but will consider the plaintiff's arguments in the context of the defendants' motions.

The court warns the plaintiff, however, that the defendant has a right to file motions—just as much of a right as the plaintiff does. It is improper, and an abuse of the legal process, for the plaintiff to try to "quash" everything the defendant files. If the plaintiff continues to ask the court to "quash" anything the defendant files, the court will have to consider sanctions against him for abusing the litigation process.

c.    Motion for Settlement and Closure of Case (Dkt. No. 69)

On May 2, 2018, the plaintiff filed "Fiduciary Appointment and Motion For The Court To Effect Full Settlement & Closure Of Said Case and Account." Dkt. No. 69. The "motion" tells the court that the defendant has continued to send the plaintiff billing statements, and makes a number of declarations and assertions. Id. It asserts that the plaintiff is current on all payments, as a result of the fact that there are no payments due because of "fraudulent concealment in the original loan agreement." Id. at 1. The "motion says that "[t]o settle this matter once and for all, by the Power of Appointment Act of 1951, Plaintiff hereby appoints yourself, the Honorable Pamela Pepper, to act as trustee and fiduciary, via IRS Form 56, to effect payment to defendant(s) should your honor rule against any prior points of law plaintiff has made." Id.

This isn't a motion. It doesn't ask the court for any relief. The plaintiff's assertion that he is "appointing" this court as a trustee or fiduciary under the Powers of Appointment Act of 1951 is absurd. This court is the independent, neutral arbiter of disputes between the parties. The court will deny this motion.

d.    Motions for Court of Special Equity (Dkt. Nos. 73, 75, 76)

The plaintiff has filed three motions that refer to a "court of special equity via special deposit." Dkt. Nos. 73, 75 and 76. The second and third motions are redundant; the plaintiff filed them six days and twelve days after filing the first motion. These motions cite no authority and do not ask the court for any relief. The first motion (the only one the court will discuss, because the second and third motions are moot) declares that the plaintiff finds "the employment of statutes to be mere gamesmanship that do not adequately serve the cause of Justice." Dkt. No. 73 at 1. The plaintiff asserts that he does not have any adequate remedy in statutory laws, and he purports to proceed "in

equity." Id. He asserts that courts of "Special Equity have exclusive jurisdiction over private cestui que trusts[5] . . . and special deposits," then states that he "invoke[s] a court of Special Equity by special deposit from which relief may be granted by motion or application." Id.

In this federal district court, "[t]here is one form of action—the civil action." Fed. R. Civ. P. 2; see also Matter of U.S. Brass Corp., 110 F.3d 1261, 1267 (7th Cir. 1997) (observing that law and equity were merged in federal courts more than a half century ago). "The 'black letter' rule is that an applicant for equitable relief has no right to such relief, but merely a right to appeal to the equitable discretion of the judge." Id. To the extent that this motion is the plaintiff's appeal to this court of law to ignore the valid laws of the United States and "do justice" as it sees fit, the court rejects that appeal, and denies the motions.

e.    Motion for Immediate Injunctive Relief (Dkt. No. 87).

On February 1, 2019, the plaintiff filed a one-page document titled "Notice of Contract Violation Motion for Immediate Injunctive Relief." Dkt. No. 87. Stripped of its frills, the "motion" states that the defendant has continued to send the plaintiff billing statements. Id. It announces that the plaintiff gives the court notice that he is going to be filing tort claims "with WI Secretary of State," and asks the court for "immediate injunctive relief from further billings and harassment by defendants, with punitive damages payable in favor of the Plaintiff." Id.

This motion is another version of the plaintiff's request that the court resolve the lawsuit in his favor before the defendant has had the opportunity to

---

[5] A *cestui que* trust is someone for whose benefit a trust is created.

respond. The plaintiff frames this version as a request for injunctive relief. A party seeking injunctive relief in federal court must show (1) irreparable harm, (2) that traditional legal remedies would be inadequate, and (3) that the claim has some likelihood of success on the merits. <u>Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.</u>, 549 F.3d 1079, 1086 (7th Cir. 2008) (citations omitted). The plaintiff's motion does not come close to meeting any of these requirements for injunctive relief and, as such, the court will deny it.

f.      Motion for Judgment (Dkt. No. 89)

On February 4, 2019, the plaintiff filed a motion for judgment in his favor. Dkt. No. 89. In this "motion," the plaintiff asserts that the defendant's lawyers have violated his "common-law copyright/tradename trademark." <u>Id.</u> at 1. He alleges that defense counsel is "acting as a secondary obstructing party," apparently for not accepting his various efforts to get the defendant to accept anything less than the mortgage payments it demands as "settlement" of his debt. <u>Id.</u> He concludes by asking the court to "award him the damages requested and proven, for his time prosecuting this case against such obdurate defendants." <u>Id.</u> at 2.

This court is unaware of any "common-law copyright/tradename trademark." This is yet another version of the plaintiff's attempt to get the court to declare him the winner of his lawsuit, and to deprive the defendant of its ability to defend itself. It is not defense counsel who is being "obdurate." It is the plaintiff. The court will deny this motion.

g.      Motion for Production and Mandatory Counter-Claim (Dkt. No. 95)

On March 18, 2019, the plaintiff filed a Motion for Defendants to Produce Accounting Evidence and Mandatory Counter-Claim to Defendants Motion Per FRCP 13. Dkt. No. 95. The plaintiff demands that the court require the

defendants to produce "under equity, GAAP ledger accountings of actual loan proceeds proving substance was extended by defendants." Id. at 1. He repeats his bizarre claim that he extended credit to the bank and the loan services "via his promissory note and mortgage security agreement." Id. at 1-2. He repeats that he has made "numerous lawful tenders" that the defendant has rejected, says the defendants recently accepted "a tender as final payment for full settlement and closure of the account" by cashing a money order, and repeats that he doesn't have to pay. Id. He also raises again his "common-law copyright/trademark." Id. At the end of the motion, the words "[b]e it so ordered" appear, followed by a colon, and then a signature line for this court. Id. at 4. The plaintiff's notarized signature follows. Id.

The court will not order the defendant to produce any documents. This motion directly violates this court's January 29, 2018 order that neither party "shall engage in discovery—demand documents from the other side, or file motions asking the court to require the other party to provide documents— until the court issues a scheduling order . . . ." Dkt. No. 52 at 14. Because the defendant has not had the opportunity to respond to the claims on which the court has allowed the plaintiff to proceed, it is premature for the court to order the parties to exchange discovery (something the court already has explained to the plaintiff in the January 29 order). If this case makes it as far as scheduling, the court will set deadlines for exchanging discovery, but that time has not yet come.

The plaintiff mentions in the caption of the motion Fed. R. Civ. P. 13, which requires a party to assert in its responsive pleading any claim that the responding party has that arises out of the same transaction or occurrence that is the subject of the opposing party's claim. Rule 13 would require the

*defendant* to assert any counterclaims it might have against the plaintiff in its answer, if it files one. There is no pleading filed against the *plaintiff*, so there is nothing for him to counter-claim.

The court will deny this motion.

### 2. *Defendant's Motions For Sanctions (Dkt. Nos. 61, 94)*

On March 14, 2018, the defendant filed a motion for relief under Fed. R. Civ. P. 37(b)(2)(A)—specifically asking the court to sanction the plaintiff by dismissing this lawsuit. Dkt. No. 61. In its brief in support of the motion, the defendant alleged that the plaintiff "continu[ed] to circumvent this Court's January 29, 2018 Order prohibiting him from conducting discovery." Dkt. No. 61-1 at 1. The defendant explained that on February 14, 2018 (a year after the plaintiff filed this federal lawsuit), the plaintiff had filed a suit against the defendant in Racine County Circuit Court. Id. The state case was scheduled for trial on April 2, 2018, and counsel argued that the state case was "designed to circumvent this Court's Order." Id. The defendant asserted that the plaintiff also had filed a complaint with the State of Wisconsin's Department of Financial Institutions, id., and had "filed UCC liens and 1099A's against the defendant somehow asserting that the defendant owes him for the money he borrowed to buy his house," id. at 3. The defendant asserted that all these proceedings were attempts to harass the defendant and to circumvent this court's order "staying all discovery." Id. at 1. The defendant also asserts that the court "ordered the Plaintiff not to conduct discovery until further review of this matter was complete," but that the plaintiff filed the lawsuit in Racine County Circuit Court "to avoid this prohibition." Id. at 3. The defendant asked the court to sanction the defendant by dismissing the case, ordering the UCC Financing Statements immediately terminated, barring the plaintiff from future

filings, ordering the 1099-A statements void and granting "any other relief as this Court may deem equitable and just per Fed. R. Civ. P. 65(b)."[6] Id. at 4.

The plaintiff objected to the defendant's motion. Dkt. No. 63. He conceded that he'd filed a small claims action in Racine County against defense counsel, and that he had appealed to the Department of Financial Institutions. Id. at 1-2. He said that he has not asked for any discovery. Id. at 1. The plaintiff stated that he "ha[d] no desire or intent to circumvent any court order" and that he had filed the state court case in order to contest the escalating attorney's fees. Id. at 2.

The court will deny the defendant's March 2018 motion for sanctions for several reasons. First, while it is true that the court's January 29, 2018 order stated that "neither party shall engage in discovery—demand documents from the other side, or file motions asking the court to require the other party to provide documents—until the court issues a scheduling order," dkt. no. 52 at 14, that order applied in *this case.* This court does not have the authority to tell the plaintiff that he can't file lawsuits in other jurisdictions, or complaints with state agencies. The court prohibited both parties in *this case* from demanding documents from each other, or from asking this court to require the other side to produce documents—nothing more.

Second, apart from the plaintiff's bizarre March 18, 2019 motion—which the court denied above—it does not appear that the plaintiff has tried to engage in discovery. He filed a case in small claims court and filed various submissions with the UCC and the IRS. But he has *not*—at least as far as the

---

[6] Rule 65(b) is the rule governing temporary restraining orders; the court suspects the defendant meant to cite Fed. R. Civ. P. 37(b), which allows a party to seek sanctions against another party for failure to comply with a court order.

31

court is aware—filed discovery demands on the defendant. That is what the court told him he could not do.

The court well understands the defendant's frustration. But this court does not have the authority to sanction the plaintiff for filing other proceedings in other forums. The court will deny the defendant's March 2018 motion.

On March 8, 2019, the defendant filed a motion for sanctions under Fed. R. Civ. P. 11(c). Dkt. No. 94. The defendant asserts that the amended complaint and the plaintiff's "many motions, letter demands, liens and filings" have no basis "in federal or Wisconsin law." Id. at 1. The defendant argues that these claims are "patently frivolous," subjecting the plaintiff to Rule 11 sanctions. Id. Finally, the defendant asserts that defense counsel sent the plaintiff the "safe harbor" letter required by Fed. R. Civ. P. 11(c)(2) on February 6, 2019, but that the plaintiff had not withdrawn his claims within twenty-one days of that date. Id. at 3.

While the plaintiff has not responded to this motion, the court will deny it. The court agrees with the defendant that the plaintiff's claims about lending money to the defendant and promissory notes being deposits into banks and the American banking system constituting theft or swindling are patently frivolous. That is why the court is not allowing the plaintiff to proceed on those claims. But as the court has explained, the plaintiff has alleged the bare bones of TILA, RESPA and FDCPA claims. Because the court is allowing the plaintiff to proceed on those claims—and *only* those claims—the court will deny the motion for dismissal as a Rule 11 sanction.

## III. NEXT STEPS

The next step in this case is that the court will order the defendant to respond to the amended complaint. There are different ways that the defendant

might respond. If the defendant files an "answer" to the amended complaint, the court will require the parties to file scheduling plans under Fed. R. Civ. P. 26(f). Once the court receives the scheduling plans, it either will issue a scheduling order or will calendar a hearing to talk to the parties about scheduling. If the defendant files a motion to dismiss rather than an answer, the court will issue an order setting deadlines for the plaintiff to file a response and the defendant to file a reply. The court will decide the motion after it is fully briefed.

Until the defendant responds to the amended complaint, there is nothing else for the plaintiff to do. The court will order the plaintiff not to file any other documents—no letters, no affidavits, no notices, no motions, *nothing*—until he hears from the court.

The court realizes that it has taken a long time to screen the amended complaint. Part of the responsibility for that delay lies with the court and its extremely crowded docket; part of it lies with the plaintiff, because of the avalanche of filings he has made in this case. If the plaintiff wants to continue with the three claims upon which the court has allowed him to proceed, he must stop clogging the court's docket with filings. He must stop burying the defendant in paper. He must stop making attacks on the defendant's lawyer. He must stop demanding that this court declare him the winner of this lawsuit before the lawsuit even has gotten under way. He must follow the rules that every litigant in this court must follow—the Federal Rules of Civil Procedure, and this court's local rules (which the plaintiff can access on the court's web site, https://www.wied.uscourts.gov/local-rules-and-orders-0).

The court has denied the defendant's two motions for sanctions. If, however, the plaintiff continues to flood the court and the defendant with

repetitive, frivolous pleadings, and fails to follow this court's orders and the federal and local rules, the court *will* have a basis to consider any future requests for sanctions.

## IV. CONCLUSION

The court **ORDERS** that defendants Michael Dubek, Jeffrey Bergida, and Mark Clauss are **DISMISSED**.

The court **DENIES** the plaintiff's motion for declaratory judgment. Dkt. No. 53.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 61.

The court **DENIES** the plaintiff's motions to quash. Dkt. Nos. 63, 82.

The court **DENIES** the plaintiff's motion for settlement. Dkt. No. 69.

The court **DENIES** the plaintiff's motions for a Court of Special Equity. Dkt. Nos. 73, 75, 76.

The court **DENIES** the plaintiff's motion for immediate injunctive relief. Dkt. No. 87.

The court **DENIES** the plaintiff's motion for judgment. Dkt. No. 89.

The court **DENIES** the defendant's motion for sanctions under Rule 11(c). Dkt. No. 94.

The court **DENIES** the plaintiff's motion to produce evidence and mandatory counter-claim. Dkt. No. 95.

The court **ORDERS** Planet Home Lending, LLC to file a responsive pleading to the amended complaint.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff shall not file any documents of any kind in this case until further order of the court.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case. Because the clerk of court will scan each filing electronically and enter it on the docket when it is received, the plaintiff need not mail copies of future filings to the defendant. The defendant will be served electronically through the court's electronic case filing system. The plaintiff should, however, keep a personal copy of every document he files with the court.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 21st day of March, 2019.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**